**ORIGINAL**

Fee Due

FILED

NAME
AARON FRANKLIN

PRISON IDENTIFICATION/BOOKING NO.
F85674

ADDRESS OR PLACE OF CONFINEMENT
Calipatria State Prison, B4-212, P. O. Box 5005

Calipatria, California 92233

Note: It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his name, address, telephone and facsimile numbers, and e-mail address.

2010 AUG 12 AM 11: 22

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

(530)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

AARON FRANKLIN

FULL NAME (*Include name under which you were convicted*)

Petitioner,

v.

LELAND McEWEN

NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER

Respondent.

CASE NUMBER:

CV **CV10-6016 JFW(RNB)**

To be supplied by the Clerk of the United States District Court

☐ _____ **AMENDED**

### PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION ___Los Angeles___
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(*List by case number*)
CV _____
CV _____

### INSTRUCTIONS - PLEASE READ CAREFULLY

1. To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2. In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3. Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4. Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5. You must include in this petition <u>all</u> the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

5. You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

6. When you have completed the form, send the original and two copies to the following address:
Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, California 90012



LODGED
CLERK, U.S. DISTRICT COURT

AUG 9 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

CV-69 (04/05)

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)

Page 1 of 10

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1.  ☒ a conviction and/or sentence.
2.  ☐ prison discipline.
3.  ☐ a parole problem.
4.  ☐ other.

# PETITION

1.  Venue
    a.  Place of detention ___Calipatria State Prison 7018 Blair Road, Calipatria, CA. 92233___
    b.  Place of conviction and sentence ___Los Angles, California___

2.  Conviction on which the petition is based *(a separate petition must be filed for each conviction being attacked).*
    a.  Nature of offenses involved *(include all counts)*: ___SECOND DEGREE ROBBERY AND ATTEMPTED SECOND DEGREE ROBBERY___

    b.  Penal or other code section or sections: ___PENAL CODE SECTIONS 211 AND 664___

    c.  Case number: ___YA064188___
    d.  Date of conviction: ___JANUARY 30, 2006___
    e.  Date of sentence: ___AUGUST 10, 2007___
    f.  Length of sentence on each count: ___18 YEARS TOTAL___

    g.  Plea *(check one)*:
        ☐ Not guilty
        ☒ Guilty
        ☐ Nolo contendere
    h.  Kind of trial *(check one)*:
        ☐ Jury
        ☒ Judge only

3.  Did you appeal to the California Court of Appeal from the judgment of conviction?    ☒ Yes ☐ No
    If so, give the following information for your appeal *(and attach a copy of the Court of Appeal decision if available)*:
    a.  Case number: ___B203269___
    b.  Grounds raised *(list each)*:
        (1) ___The trial Court violated the pleas agreement___

---

(2) _Ineffective assistance of trial counsel in failing to move to set aside the guilty plea_

(3) _The court erred in failing to conduct a hearing on defendant's failure to appear_____

(4) _____

(5) _____

(6) _____

c.  Date of decision: _October 16, 2008_____

d.  Result _____Affirmed with modification adding a $20 security fee on each count_____

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?    ☐ Yes    ☒ No

If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a.  Case number: _____

b.  Grounds raised *(list each)*:

(1) _____

(2) _____

(3) _____

(4) _____

(5) _____

(6) _____

c.  Date of decision: _____

d.  Result _____

5.  If you did not appeal:

a.  State your reasons _____

_____

_____

_____

b.  Did you seek permission to file a late appeal?    ☐ Yes    ☐ No

6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

☒ Yes    ☐ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.  (1) Name of court: Los Angeles Superior Court

(2) Case number: YA064188

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: August 17, 2009

(4) Grounds raised *(list each)*:

(a) Trial Counsel Was Ineffective for Failing to Fully Investigate the Case

(b) Trial Counsel Was Ineffective and Operated Under a Financial Conflict of Interest

(c) Appellate Counsel rendered Ineffective Assistance of Counsel

(d) 

(e) 

(f) 

(5) Date of decision: August 19, 2009

(6) Result    Petition Denied

(7) Was an evidentiary hearing held?    ☐ Yes    ☑ No

b.  (1) Name of court: California Court of Appeal

(2) Case number: B221756

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: January 21, 2010

(4) Grounds raised *(list each)*:

(a) Trial Counsel Was Ineffective for failing to Fully Investigate the Case

(b) Trial Counsel Was Ineffective and Operated Under A Financial Conflict of Interest

(c) Appellate Counsel Rendered Ineffective Assistance of Counsel

(d) 

(e) 

(f) 

(5) Date of decision: March 18, 2010

(6) Result    Petition Denied

(7) Was an evidentiary hearing held?    ☐ Yes    ☑ No

c.  (1) Name of court: California Supreme Court

(2) Case number: S181302

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: March 26, 2010

(4) Grounds raised *(list each)*:

(a) Trial Counsel Was Ineffective for failing to Fully Investigate the Case

(b) Trial Counsel Was Ineffective and Operated Under A Financial Conflict of Interest

(c)  Appellate Counsel Rendered Ineffective Assistance of Counsel

(d)  _____

(e)  _____

(f)  _____

(5) Date of decision: May 20, 2010

(6) Result  Petition Denied

(7) Was an evidentiary hearing held?     ☐ Yes   ☐ No

7.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than five grounds.  Summarize briefly the facts supporting each ground.  For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

CAUTION:     *Exhaustion Requirement*:  In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court.  This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

a.  Ground one: Trial Counsel Was Ineffective for failing to Fully Investigate the Case

(1) Supporting FACTS: Trial counsel took over the case and pled the defendant out the next day, without sufficient time to review the record and speak to witnesses, while representing to petitioner, his family, and the trial court that he would be ready to try the case the next day    SEE ADDITIONAL PAGES

(2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☐ Yes   ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☐ Yes   ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☒ Yes   ☐ No

b.  Ground two: Trial Counsel Was Ineffective and Operated Under A Financial Conflict of Interest

(1) Supporting FACTS:  Trial counsel accepted the case knowing the petitioner wanted to go to trial, accepted fees and represented to the court he would be ready for trial the next day, but then pled the petitioner out to maximize the monetary value of the case to himself  .  SEE ADDITIONAL PAGES

(2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☐ Yes   ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☐ Yes   ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☒ Yes   ☐ No

c.  Ground three: Appellate Counsel Rendered Ineffective Assistance of Counsel

(1) Supporting FACTS: Appellate counsel failed to support the claim on direct appeal of ineffective assistance of counsel by filing a petition for writ of habeas corpus and/or otherwise providing a proper record for the Court of Appeal to reach the issue: And he failed to move to set aside the plea agreement -- something he was hired to do and claimed trial counsel was ineffective for not doing.  SEE ADDITIONAL PAGES

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☒ Yes   ☐ No

d.  Ground four: _____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐ Yes   ☐ No

e.  Ground five: _____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐ Yes   ☐ No

8.   If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

9.   Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes    ☒ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?    ☐ Yes   ☐ No

b.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?      ☐ Yes   ☐ No

10. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?      ☐ Yes   ☒ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

11. Are you presently represented by counsel?      ☒ Yes   ☐ No

If so, provide name, address and telephone number: Alan S. Yockelson, SBN 130380, 555 N. El Camino Real Suite A 418, San Clemente, California 92672 (949) 290-6515

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding,

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on  July 21, 2010
                    *Date*

_____
*Signature of Petitioner*

## ADDITIONAL FACTS IN SUPPORT OF CLAIMS

### GROUND I

**TRIAL COUNSEL RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HE FAILED TO FULLY INVESTIGATE ALL OF THE FACTS OF THE CASE BEFORE URGING PETITIONER TO PLEAD GUILTY AFTER BEING COUNSEL OF RECORD FOR LESS THAN 24 HOURS**

Reversal of a conviction on the basis of ineffective assistance of counsel requires defendant to show that counsel's representation fell below an objective standard of reasonableness, and that a reasonable probability exists that a more favorable determination would have resulted absent counsel's error or omission. (Strickland v. Washington (1984) 466 U.S. 668, 687, 692; People v. Duncan (1991) 53 Cal.3d 955, 966; People v. Ledesma (1987) 43 Cal.3d 171, 216-217.) It is settled that "Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel. [Citations.]" (People v. Ledesma, supra, 43 Cal.3d at p. 215.) "Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to effective assistance. [Citations.]" (Ibid.; see also Powell v. Alabama (1932) 287 U.S. 45, 71.) A defendant is entitled to counsel who represents him "in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (People v. Pope (1979) 23 Cal.3d 412, 425.) Thus, both the California Constitution and the Sixth Amendment "require counsel's 'diligent and active participation in the full and effective preparation of his client's case.' Criminal defense attorneys have a duty to `"investigate carefully all defenses of fact and of law that may be available to the defendant ...."'" (Id. at pp. 424-425, citation omitted.)

"To establish ineffectiveness of counsel under article I, section 15 of the California Constitution, petitioner must prove that counsel failed to make particular investigations and that the omissions resulted in the denial of or inadequate presentation of a potentially

1

meritorious defense. [Citation.]" (In re Sixto (1989) 48 Cal.3d 1247, 1257; see also People v. Rodriguez (1977) 73 Cal.App.3d 1023, 1031-1032.) The test for measuring competency of counsel is similar under the Sixth Amendment. (Ibid.) Thus, "[t]o establish that counsel's assistance was sufficiently ineffective to justify issuance of a writ of habeas corpus, petitioner must first demonstrate that counsel's performance `"fell below an objective standard of reasonableness ... under prevailing professional norms."'" (In re Cordero (1988) 46 Cal. 3d 161, 180, quoting People v. Ledesma, supra, 43 Cal.3d 171, 216, and Strickland v. Washington, supra, 466 U.S. 668, 688.) "Finally, it must also be shown that the omission was not attributable to a tactical decision which a reasonably competent, experienced criminal defense attorney would make. [Citation.]" (Ibid.)

The test for prejudice requires the defendant to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (In re Sixto, supra, 48 Cal.3d 1247, 1257.) "A `reasonable probability' is not a showing that `counsel's conduct more likely than not altered the outcome in the case,' but simply `a probability sufficient to undermine confidence in the outcome.' (Strickland v. Washington, supra, 466 U.S. at pp. 693-694.)" (In re Cordero, supra, 46 Cal.3d 161, 180, parallel citations omitted.) A court determines whether the defendant has been prejudiced by "reviewing the record as a whole, and resolving ... reasonable doubts in defendant's favor ...." (People v. Shaw (1984) 35 Cal.3d 535, 541.)

The pleading- and plea bargaining-stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions. (In re Alvernaz (1992) 2 Cal.4th 924, 932; see also Hill v. Lockhart (1985) 474 U.S. 52.) It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea. (Ibid., Hill v. Lockhart, supra, 474 U.S. at pp. 56- 60.)

"It is the attorney, not the client, who is particularly qualified to make an informed

2

evaluation of a proffered plea bargain." (In re Vargas (2000) 83 Cal.App.4th 1125, 1133.) To meet professional standards, counsel advising a criminal client regarding a plea must provide "competent advice as to all aspects of the case, including a candid evaluation of the case. This should [include] an accurate discussion about the rules and regulations affecting the determination of the maximum and minimum periods of confinement, the average length of confinement served by prisoners on like charges, as well as all relevant circumstances." (Id. at p. 1139; In re Alvernaz, supra, at pp. 936, 937 & fn. 6.)    The rights of criminal defendant's to plea-bargain at full strength, fully aware of the consequences of their plea-bargains, is critical.

In conducting plea-bargaining discussions with the prosecutor, defense counsel must communicate promptly to the accused all proposals made by the prosecutor, and ensure that the accused's choice on the question of a guilty plea is an informed one, made "with full awareness of the alternatives, including any that arise from proposals made by the prosecutor." (In re Alvernaz, supra, (1992) 2 Cal.4th 924, 935.) "Both alternate decisions, to plead guilty or instead to proceed to trial, are products of the same attorney-client interaction and involve the same professional obligations of counsel." (In re Alvernaz, supra, 2 Cal.4th at p. 934.)    Application of the constitutional guaranty of effective assistance of counsel to the advice given a defendant to plead guilty, necessarily encompasses the counterpart of that advice: to reject a proffered plea bargain and submit the issue of guilt to the trier of fact.

To be valid, guilty pleas must be based upon a defendant's full awareness of the relevant circumstances and the likely consequences of his action. (People v. McCary (1985) 166 Cal.App.3d 1, 9.) Thus, a defendant was ineffectively represented by counsel if counsel's acts or omissions appear to result in his entering a plea under the influence of "mistake, ignorance or inadvertence or any other factor overreaching defendant's free and clear judgment" which would justify withdrawal of his plea. (Id., at p. 7.)

Mistakes regarding the maximum length of a sentence fall squarely within this

3

category. In McCary, the defendant entered a guilty plea in exchange for dismissal of a five-year enhancement that did not, in fact, apply to his offenses, since they had been committed before the effective date of the statute creating the enhancement. The Court of Appeal found that trial counsel's failure to discover that the enhancement could not have been applied to the sentence was ineffective assistance, as "[a] plea cannot stand on a serious misapprehension of the penal consequences of a plea bargain." (People v. McCary, supra, 166 Cal.App.3d at pp. 8-9.) The error was prejudicial because, "it can be fairly concluded the promise to dismiss the enhancement charge was a substantial inducement in defendant's decision to plead guilty." (People v. McCary, supra, 166 Cal.App.3d at p. 10.)

Similarly, in People v. Johnson (1995) 36 Cal.App.4th 1351, the Court of Appeal found that trial counsel's erroneous advice that the maximum sentence was 38 years rather than the actual 27 constituted prejudicial failure of effective counsel. The court noted that "[t]he 11-year error in Ms. Jones's calculation led appellant to believe that, by accepting the plea bargain, he was shortening his potential sentence by some 18 years when, in fact, he was saving 7 years at best. By any measure, this would constitute a 'serious misapprehension of the penal consequences' of his plea. (Id. at pp. 1357-1358 quoting People v. McCary, supra, 166 Cal.App.3d at p. 9; see also, United States v. Herrold (3d Cir. 1980) 635 F.2d 213, 215-216, [defendant could not have intelligently and voluntarily entered a plea where court and counsel had erroneously advised him that his maximum exposure was 45 years, rather than 25]; United States v. Rumery (5th Cir. 1983) 698 F.2d 764, 766, [counsel's advisement that maximum exposure was 30 years when it was actually 5 constituted ineffective assistance of counsel]. )

Defense counsel has the obligation to investigate all defenses, explore the factual bases for defenses (In re Neely (1993) 6 Cal.4th 901, 919) and the applicable law. (People v. Plager (1987) 196 Cal.App.3d 1537, 1543; P eople v. Maguire (1998) 67 Cal.App.4th 1022, 1028.) If counsel's failure to perform these obligations results in the withdrawal of a potentially meritorious defense, defendant has not had the assistance to which he is entitled.

4

(People v. Plager, supra, at p. 1543.) Judgments have been reversed because counsel failed to investigate the law or facts of the case. (People v. Soriano (1987) 194 Cal.App.3d 1470, 1480-1482; People v. Corona (1978) 80 Cal.App.3d 684, 718-719; In re Cordero (1988) 46 Cal.3d 161, 180, 187; In re Marquez (1992) 1 Cal.4th 584, 602-609.)

Respondent's defense of defense counsel's performance is unavailing, for it fails to present any facts, other than the say-so of the demonstrably unreliable and historically incompetent defense counsel, that would refute petitioner's contentions that his trial counsel failed utterly to conduct an appropriate factual investigation, that his trial counsel failed entirely to examine the legal issues in this matter, and that his trial counsel was not prepared to present anything other a sham trial.

Here, Attorney Williams' urging petitioner to take the plea offer did not come as the result or a reasoned and rational balancing of the factors that reasonably competent counsel would engage in. Rather, the decision to urge Petitioner to take the plea offer was based upon trial counsel's greed and lack of familiarity with the case. It is clear, on the face of the record, that Mr. Williams duped Petitioner, his family, and the trial court, into believing that he could come into the case at the very last minute and try the case. As Mr. Williams knew, and the trial court reaffirmed, he would not have been allowed to substitute in had he not professed to be able, willing and ready to proceed immediately to trial.

On January 30, 2007, Petitioner was present in court, this time represented by attorney Frank Williams. (CT 155.) Mr. Williams appeared requesting that he be allowed to substitute in as counsel of record in place of Mr. Zola and Mr. Pinta. (RT B-9.) The trial court indicated "that the only way Mr. Williams could substitute in was if he was ready to go to trial today." (RT B-9: 9-11.) Mr. Williams indicated that he had only become involved with the case the day before, but had had some prior contact with Mr. Zola. (RT B-9.) Mr. Williams, on several occasions, expressed his readiness to proceed immediately with trial because, as he explained it, "[e]ssentially my response to that is Mr. Franklin's defense doesn't take a whole lot of investigation or preparation which is what I generally use time

5

to prepare for." (RT B-10: 17-20.) He based this on the fact that: "Essentially Mr. Franklin's defense is going to be himself." (RT B-10: 21-22.) He eschewed any need for "external evidence" which would cause delay. (RT B-10:23.) Mr. Williams did indicated that if he had more time, he would look into retaining an expert to explore Mr. Franklin's "vulnerability." (RT B-11: 3.) Mr. Williams also conceded that he did not yet know what the disposition of the co-defendant's case was, or whether or not the co-defendant would be testifying. (RT B-11.) Despite the court's inquiry as to his readiness and not knowing whether the co-defendant would testify, Mr. Williams again expressed his confidence in his ability to go forward and try the case. (RT B-11-12.) Mr. Williams went so far to assure the court that there was "no chance[]" he would come back after the lunch hour and decide he needed a continuance. (RT B-12: 10.) With Petitioner's agreement, the court relived Mr. Pintal and Mr. Zola and allowed Mr. Williams to substitute in as counsel. (RT B-12.) Mr. Williams' first act as counsel of record was to ask that the Penal Code section 1538.5 motion be taken off calendar. (RT B-13.)

Immediately after having been allowed to substitute in as counsel of record by convincing both the Petitioner, his family, and the court that he was prepared to try the case, Mr. Williams began pressuring Petitioner and his family to "take the deal." According to Petitioner, "Mr. Williams confidence went from wanting to go to trial to wanting me to take this deal of 13 years. He even went further to tell me that he can get me fire camp which is 35% of my time, and he will be able to do this based on my age and this being my first offense." (Exhibit "1," pp. 1-2; ¶ 6.)

According to Petitioner's mother, Petitioner was asked to come in the judge's chambers after jury selection was completed.

"The family asked Mr. Williams what this was all about and he said that he didn't have a clue. Judge Arnold asked Aaron if he knew what his was doing, and Aaron replied: yes I want to go to trial." Judge Arnold replied: "if you take this to trial and loose I will max you out." The Judge looked over to

6

where the deputy district attorney and detective Rudolph where talking and asked the deputy district attorney what the "max" was "if this kid loses" and the deputy district attorney responded, "24 years and 8 months." The Judge looked at Aaron and said: "do you understand what Mr. Schriner has just said if you lose you can get 24 years 8 months that will be what you will get if you take it to trial and lose." So the Judge told Aaron to go talk with family in the jury room and come back with a decision. Aaron told the judge that going to trial was what he wanted to do and that seemed to anger the Judge, as he once again told Aaron that the deputy district attorney had a good case against him and a lot of evidence against him, and he assured him that they will use it all against Aaron and he will lose. Before the Judge requested to speak to Aaron, Mr. Williams was feeling very good about the jury selection." (Exhibit "2," p. 2, ¶ 9.)

"After the Judge spoke to Aaron, Mr. Williams stated to the family that he will never win a trial in Torrance because it seems that the court doesn't like this family and it is obvious that the court has something personal against the family. As we were all seated in the jury room, Mr. Williams told Aaron to please take the 13 years and we will talk later about something else. Mr. Williams further stated that he can get him fire camp which is 35% of the time and he would buy him more time before he had to surrender." (Exhibit "3," ¶ 11.)

There is simply no explanation for counsel's quick turn around other than that he told Petitioner and the trial court what they wanted to hear to secure his position as counsel of record and obtain a payday. As such, the advise he gave was neither reasoned nor informed, but rather was designed to be the path of least resistance and the easiest way for Mr. Williams to line his pockets – without regard to what was in the best interests of his client. Thus, in addition to constitutionally inadequate advice on whether or not to accept the plea

7

bargain – bearing in mind the fact that despite the seriousness of the offenses this was Petitioner's FIRST EVER criminal case – the facts also demonstrated that Mr. Williams had a direct pecuniary conflict of interest with Petitioner.

## GROUND II

**TRIAL COUNSEL REPRESENTED PETITIONER WHILE OPERATING UNDER A CONFLICT OF INTEREST. UNDER THESE CONDITIONS, PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AND THE JUDGMENT OF CONVICTION SHOULD THEREFORE BE REVERSED AND PETITIONER AFFORDED A NEW TRIAL, ACCORDINGLY**

As set forth above, Mr. Williams had a direct financial conflict with petitioner. "State criminal defendants are guaranteed by both the federal and state Constitutions `the assistance of counsel. This right is to assistance of a lawyer "untrammeled and unimpaired" by the burden of representing "conflicting interests."' (Glasser v. United States (1942) 315 U.S. 60, 70; Holloway v. Arkansas (1978) 435 U.S. 475, 482; People v. Charon (1968) 69 Cal.2d 765, 774; cf. People v. Mroczko (1983) 35 Cal.3d 86, 103 105]; Annot., Multiple Representation of Defendants in Criminal Case as Vocative of Sixth Amendment Right to Counsel-Federal Cases, 64 LED.2d 907; Cannot., Circumstances Giving Rise to Conflict of Interest Between or Among Criminal Codefendants Precluding Representation by Same Counsel, 34 A.L.R.3d 470.)" (People v. Amaya (1986) 180 Cal.App.3d 1, 7, fn. omitted.) Put another way, "[a] criminal defendant's right to effective assistance of counsel, guaranteed by both the state and federal Constitutions, includes the right to representation free from conflicts of interest." (Wood v. Georgia (1981) 450 U.S. 261, 27]; People v. Jones (1991) 53 Cal.3d 1115, 1134.)" (People v. Kirkpatrick (1994) 7 Cal.4th 988, 1009; accord: People v. Clark (1993) 5 Cal.4th 950, 994; People v. Hardy (1992) 2 Cal.4th 86, 135; People v. Cox (1991) 53 Cal.3d 618, 653; People v. Jones, supra, 53 Cal.3d 1115, 1134; People v. Benin (1989) 47 Cal.3d 808, 834.) "It applies to a defendant who retains his own counsel as well as to a defendant who is represented by appointed counsel." (People v. Hardy, supra, 2 Cal.4th at p. 135, citing People v. Benin, supra, at p. 834; Curler v. Sullivan (1980) 446 U.S. 335, 344-345.)

The California Supreme Court has "repeatedly recognized that such conflicts `embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his [or her] responsibilities to another client or a third person or by his [or her] own interests. [Citation.]'" (People v. Clark, supra, 5 Cal.4th at p. 994; accord, People v. Hardy, supra, 2 Cal.4th at p. 135; People v. Jones , supra, 53 Cal.3d at p. 1134; People v. Cox , supra, 53 Cal.3d at p. 653; People v. Benin, supra, 47 Cal.3d at p. 835.) "Although `most conflicts of interest seen in criminal litigation arise out of a lawyer's dual representation of co-defendants, the constitutional principle is not narrowly confined to instances of that type.' (United States v. Hurt (D.C.Cir. 1976) 177 App.D.C. 15 [543 F.2d 162, 166], fn. omitted.) Thus, a conflict may exist `whenever counsel is so situated that the caliber of his services may be substantially diluted.' (Ibid., fn. omitted; Smith v. Lockhart (8th Cir. 1991) 923 F.2d 1314, 1320.)" (People v. Hardy, supra, 2 Cal.4th at pp. 135 - 136.)

When "` "counsel is burdened by an actual conflict of interest, prejudice is presumed ...."'" (People v. Hardy, supra, 2 Cal.4th 86, 135, quoting Strickland v. Washington (1984) 466 U.S. 668, 692 [80 LED.2d 674, 696].) A claim that counsel's loyalty was divided by virtue of his own conflicting interests is a claim of such a conflict. (People v. Hardy, supra, 2 Cal.4th at pp. 135-136.)" (People v. Maryfield (1993) 5 Cal.4th 142, 206.) "`"... [The presumption arises, however, `only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."' "`'" (Id. at p. 206.)

> "The standard for obtaining relief under the Sixth Amendment based upon a conflict of interest depends upon whether the defendant objected to the conflict at trial. Where a trial court requires the continuation of conflicted representation over a timely objection, reversal is automatic. (Holloway v. Arkansas (1978) 435 U.S. 475, 488.) On the other hand, `"a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." [Citations.] The Court in [Curler v. Sullivan [(1980) 446 U.S. 335, 348] made clear that such a defendant must "show[] that his counsel actively represented conflicting interests," and "the possibility of conflict is insufficient to impugn a criminal

conviction." [Citation.]' (People v. Easley (1988) 46 Cal.3d 712, 724; parallel citations and emphasis omitted.)" (People v. Clark, supra, 5 Cal.4th at pp. 994-995.)

The California standard is more exacting: "'Under our state Constitution, "[w]e have applied a somewhat more rigorous standard of review."'" (People v. Mroczko (1983) 35 Cal.3d 86, 104.) Regardless of an objection, "even a potential conflict may require reversal if the record supports" 'an informed speculation that petitioner's right to effective representation was prejudicially affected. Proof of an actual conflict' is not required." (Id., at p. 105.)' (People v. Cox (1991) 53 Cal.3d 618, 654.)" (People v. Clark, supra, 5 Cal.4th at p. 995.) The California Supreme Court has also observed that the assessment of trial counsel of his or her ability to vigorously defend the client is an important factor to consider:

> "The United States Supreme Court has addressed this point, noting that 'trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel.' (Curler v. Sullivan (1980) 446 U.S. 335, 347.) A criminal defense attorney '"is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial."' (Holloway v. Arkansas (1978) 435 U.S. 475, 485, quoting State v. Davis (1973) 110 Ariz. 29, 31 [514 P.2d 1025, 1027].)" (People v. Hardy, supra, 2 Cal.4th at p. 137; parallel citations omitted.)

When a trial court knows or should know that defense counsel has a possible conflict of interest with his client, it must inquire into the matter (People v. Benin, supra, 47 Cal.3d at p. 836; Wood v. Georgia, supra, 450 U.S. at p. 272]; see Holloway v. Arkansas, supra, 435 U.S. 475, 484]) and act in response to what its inquiry discovers (People v. Benin, supra, 47 Cal.3d at p. 836). If the court determines that a waiver of a conflict of interest by the defendant is called for, it must assure itself that " '(1) the defendant has discussed the potential drawbacks of [potentially conflicted] representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of [such] representation in his case, (3) that he knows of his right to conflict-free representation, and (4) that he voluntarily wishes to waive that right.' (People

11

v. Mroczko [(1983)] 35 Cal.3d [86,] 110 [197 Cal.Rptr. 52, 672 P.2d 835]; see Glasser v. United States [(1942)] 315 U.S. [60,] 71 [86 LED.2d [680,] 699-700 (62 S.Ct. 457)] [to similar effect].)" (People v. Benin, supra, at p. 837; People v. Jones, supra, 53 Cal.3d at pp. 1136 - 1137.)

Finally, as explained by the California Supreme Court in People v. Easley, supra, 46 Cal.3d at page 725, "[i]t is important to recognize that 'adverse effect on counsel's performance' under [Curler v.] Sullivan, supra, 446 U.S. at pages 348 and 350, is not the same as 'prejudice' in the sense in which we often use that term. When, for example, we review a 'traditional' claim of ineffective assistance of counsel (i.e., one involving asserted inadequate performance as opposed to 'conflicted' performance), we require the defendant to show a reasonable probability that the result (i.e., the disposition) would have been different. [Citations.] ... As we suggested in Mroczko, supra, Sullivan requires an inquiry into whether the record shows that counsel 'pulled his punches,' i.e., failed to represent defendant as vigorously as he might have had there been no conflict. [Citation.]"

Under our "somewhat more rigorous" state standard, a showing that the alleged conflict prejudicially affected counsel's representation of the defendant is also required. (See People v. Rodriguez (1986) 42 Cal.3d 1005, 1014 ["some grounds to believe that prejudice occurred must be discernible"]; People v. Castillo (1991) 233 Cal.App.3d 36, 62] [any "informed speculation" of prejudice from conflict dispelled by examination of the trial record]; People v. Marshall (1987) 196 Cal.App.3d 1253, 1257-1258 ["existence of even a potential conflict of interest must be accompanied by some evidence of ineffective representation before reversal is required"].) (People v. Clark, supra, 5 Cal.4th at p. 995.)

Examination of the record in the present case indeed leads one to the conclusion that Mr. Williams did "pull his punches" with regard to petitioner's case. No sooner did he insinuate himself into the case, than he began to urge Petitioner to plead guilty. All of this was done without benefits of his independent investigation of the case. Nor, did he ever explain how what was a clearly defensible case in the morning became indefensible over the

12

lunch hour.  As the trial judge in this case commented, this was **NEVER** a maximum sentence case: petitioner was a first-time offender and although the crimes were serious, no shots were fired and none of the victims were physically harmed.  Indeed, had he not been statutorily illegible for probation, the probation report indicated that a year in county jail as a condition of probation would have been the recommended sentence.  (See RT D-3-4; CT 185.) Given the lack of investigation by counsel and the financial interest involved in getting in and out of the case quickly, it is impossible to say that Petitioner was afforded the adequate assistance of counsel guaranteed by our state and federal constitutions.

13

**GROUND III**

**BOTH MR. WILLIAMS AND MR. DARDEN RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO MOVE TO REVOKE THE PLEA AGREEMENT**

As the trial judge noted during sentencing, Petitioner could not, and did not, fail to appear on March 12, 2007 as promised by just his own doing. To be sure, he had some complicity in the events that occurred after February 16, 2007, but as the trial noted, he was just 17 years old and had poor guidance from some family members during that time. (RT D-3-4.) However, unbeknownst to the trial court, that was not the full the story: trial counsel were equally responsible for what later transpired.

According to petitioner's uncle, Charles Templer, he was "contacted by Mr. Williams because the court had ordered Aaron to turn himself in early due to being considered a flight risk." (Exhibit "5," p. 1, ¶ 7.) In addition, Mr. Williams told Mr. Templer "that he didn't want to have contact with the parents since as long as he didn't talk to them, and Aaron could not be contacted, then nothing additional would happen to him if he showed up and turned himself in anytime up to the moment he was due back to be taken into custody on March 12, 2007." (Exhibit "5," pp. 1-2, ¶ 7.) Mr. Templer also stated that there were a series of text messages sent to him from Mr. Williams that were turned over to Detective Rudolph. (Exhibit "5," p. 2, ¶ 8.; see also Exhibit "2," p. 3, ¶ 14; Exhibit "3," p. 2, ¶ 11; Exhibit "4," p. 5, ¶ 31.)

What Petitioner himself was informed of was that:

"... Mr. Williams contacted my uncle Chuck Templer through a text message, informing my uncle that the Court wanted me to show up on February 16, 2007. Mr. Williams said not to worry he would go there and see what was the problem and he will let us know, but just in case send me over to a friend's house until we hear from him. That was the last time we heard from Mr. Williams. He did not tell us that all of this was based on Detective Rudolph talking to my first bail bonds company and their ill-informed claim that I was a flight risk because my family is wealthy and from Belize.

14

"Apparently, as a result of that claim, the court wanted me in custody before the agreed upon date of March 12, 2007. Mr. Williams again contacted my uncle Chuck Templer through another text message, telling him to get me out of the house because the Torrance police department was going to raid my mom's home with force to get me.

"Around the same time, Mr. Plotkins, who issued the bond securing my appearance, called my mother and told her that the judge had issued a warrant for my arrest and that Detective Rudolph had called him and asked if they were going to send the bounty hunters out to bring me in. Mr. Plotkins informed the Torrance Police Department that I was not in violation because it was agreed that I would appear on March 12, 2007, for sentencing." (Exhibit "1," pp. 2-3, ¶¶ 9-11.)

Paranoia set in: Attorney Frank Williams set the fire, and Petitioner's family members added fuel to the blaze.

"By this time, my father – in fear for my life -- influenced me to go to a hotel until he could sort this al out. Also, at this time, Mr. Williams contacted my uncle Chuck Temper again via text message, telling him "not allow Aaron to be influenced by the bounty hunter as they don't want to help. they only want the bounty money so do not listen to them at all wait for me. I will turn him in myself."

"When my dad finally contacted Mr. Williams from a friend's phone, Mr. Williams asked my dad why he hadn't taken me Aaron out of town. He said: "that is why I have been buying you all this time." My dad told Mr. Williams that this was your idea but you now have turned on us and now you are lying to the court, that is why you are texting Chuck and not me. I plan on doing the right thing and exposing you to the court." My father had me not very far away and he told me that if it was safe, I must turn myself in and revoke the plea.

"On March 12, 2007, the day I was to be sentenced, my father told me to lay low and he would go to the court himself and see if it was safe to take me there. When he returned, he had the look on his face as if he had seen a ghost. He told me that he had seen the Torrance Police Department and the bounty hunters waiting there to grab me. So my father made me lay low. He said he would not let anyone hurt me and that we would find an attorney to help us sort out this mess that was created by Williams." (Exhibit "1," p. 3, ¶¶

15

12-14; see also Exhibit "3, " pp. 3-4, ¶¶ 12-16 ; Exhibit "4," p. 5. ¶ 32.)

In short, by the time March 12, 2007 arrived, Petitioner was too afraid to walk into the court house to surrender; but Mr. Williams was not too afraid to speak to the court in chambers.

Moreover, despite chiding Mr. Williams on direct appeal for failing to move to revoke the plea bargain, Mr. Darden himself failed to perform the very same act he claimed Mr. Williams was incompetent for failing to do, and for which he was explicitly retained to perform. (See Exhibit "10.). . Petitioner understood that "When being interviewed by my parents, Mr. Darden said that he was ready for a fight and he would attempt to revoke the plea agreement and file a writ to remove the judge from this case. He also told my parents he wrote about the Torrance courts in his book. With that agreement, Mr. Darden was retained." (Exhibit "1," p. 4, ¶ 17; Exhibit "2," p. 5, ¶¶ 23-24.) However, no motion to vacate the plea agreement was ever filed. Instead, Mr. Darden filed a "Sentencing Memorandum" on August 10, 2007. (CT 186.) Therein, Mr. Darden was clear that his "purpose in writing this memorandum is not to withdraw Aaron's plea, but to instead plead for a 13 year sentence originally promised Aaron." (CT 188; see also Exhibit "7," pp. 4-5.) Neither Mr. Williams nor Mr. Darden asked for a hearing to explain why petitioner failed to appear either on the 20th of February 2007 or March 12, 2007. Indeed, not even Mr. Williams appeared on February 20, 2007, as he promised the trial court he would do. (Exhibit "7," pp. 3, 5-6.)

"The test for prejudice that is relevant in light of the preceding is well established. In *Hill, supra*, 474 U.S. at pages 58-59 [106 S.Ct. at pages 370-371], the United States Supreme Court explained that a defendant who pled guilty demonstrates prejudice caused by counsel's incompetent performance in advising him to enter the plea by establishing that a reasonable probability exists that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial. (Accord, In re Alvernaz, supra, 2 Cal.4th at pp. 933-934; see also People v. Brown (1986) 177 Cal.App.3d 537, 554 [223 Cal.Rptr.

16

66].)" (In re Resindez, supra, 25 Cal.4th at p. 253.) In addition to Petitioner's own averments that he would have not pled guilty had he been fully and accurately advised of the immigration consequences of his plea, there must also be independent objective corroboration. (In re Resindez, supra, 25 Cal.4th at p. 253.) Both are adequately present in this case.

Here, as noted many times, Petitioner wanted to go to trial. Indeed, Mr. Zola and Mr. Pintal were relieved as counsel because they were not ready to try the case, and Mr. Williams was brought in because he professed his ability to the court, Petitioner and Petitioner's family, that he was ready to try the case. And, Mr. Darden was later hired to move to revoke the plea agreement and try the case. All of these independent facts corroborate the claim that petitioner preferred to face trial than plead guilty under the circumstances presented. Also, Petitioner was both a youthful and first-time offender for whom a maximum sentence was totally uncalled for. ( RT D-3-4; CT 185.)

Thus, because of the facts that were unknown and undeveloped by either Mr. Williams or Mr. Darden, and consequently by the Court of Appeal on direct appeal (see Exhibit "7"), it is not too surprising that the Court of Appeal rejected out of hand Mr. Darden's claims – including the claim that Mr. Williams was incompetent, that the court violated the plea bargain, and that a hearing to determine why Petitioner failed to appear on March 12, 2007 was not heard. However, under the circumstances now revealed, Petitioner is entitled to have his convictions reversed and his plea agreement set aside.

Petitioner was released pending sentencing, under a "Cruz" waiver (People v. Cruz (1988) 44 Cal.3d 1247, 1253). Petitioner was instructed to appear at sentencing. (RT 19.) He was never advised that he could withdraw the plea if information in the probation report changed the circumstances. No hearing was ever held, as required by Cruz, to determine if Petitioner's failure to appear was willful.

The superior court did not impose the indicated sentence of 13 years, or the maximum term of 24 years, 4 months. Instead, it chose an intermediate term. (CT 210-215; RT D4.)

17

In <u>People</u> v. <u>Cruz</u>, <u>supra</u>, 44 Cal.3d at 1253, the California Supreme Court held that an additional or enhanced sentence imposed because of a failure to appear at a sentencing hearing, **without the benefit of a trial on the failure to appear**, and in the absence of a knowing and intelligent waiver, is clearly offensive to the principles of due process. A defendant fully advised of his rights to be sentenced in accordance with the plea bargain may expressly waive those rights, such that if the defendant willfully fails to appear for sentencing the trial court may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term. Any such waiver, of course, would have to be obtained at the time of the trial court's initial acceptance of the plea, and it must be knowing and intelligent. (44 Cal.3d at 1254, fn. 5; emphasis added.)

In a plea bargain, if the defendant agrees to a specified greater term to be imposed if he should fail to appear for sentencing, and to a specified lesser term if he does appear, the trial court may impose the greater term if he fails to appear at the sentencing hearing without justification. (<u>People</u> v. <u>Vargas</u> (1990) 223 Cal.App.3d 1107, 1108.)

In this case, a "Cruz waiver" was never mentioned by name at the plea hearing, nor that he was entitled to a trial on the failure to appear should that occur. This is insufficient to constitute a valid <u>Cruz</u> waiver, because it was not a knowing and intelligent relinquishment of a known right, and it was never explained to Petitioner that he would receive the greater term if he failed to appear for sentencing.

Even if there was a valid <u>Cruz</u> waiver, the trial court should not have found that Petitioner violated the terms of his release. Under <u>People</u> v. <u>Cruz, supra</u>, 44 Cal.3d at 1254, the court may sentence in excess of the plea bargain only if the defendant willfully fails to appear for sentencing. Under <u>People</u> v. <u>Vargas, supra</u>, 223 Cal.App.3d at 1113, the higher tier sentence may be imposed if the defendant fails to appear at the sentencing hearing without justification.

In this case, no hearing was ever conducted by the trial court as to the reasons for petitioner's failure to appear on March 12, 2007.  Neither Mr. Williams nor Mr. Darden

18

asked for such a hearing, despite the crucial importance that such a hearing would have in determining whether the 13 years bargained for should be imposed, or whether some other remedy such as revoking the plea agreement should apply. That failure, in light of the very reason those two attorneys were hired – especially Mr. Darden – requires relief again on the basis that Petitioner was not afforded his constitutional right to the effective assistance of counsel.

Violation of a plea bargain by an officer of the state raises a constitutional right to some remedy. The goal in providing a remedy for breach of the bargain is to redress the harm caused by the violation without prejudicing either party or curtailing the normal sentencing discretion of the trial judge. The remedy chosen will vary depending on the circumstances of each case. Factors to be considered include (1) who broke the bargain; (2) whether the violation was deliberate or inadvertent; (3) whether circumstances have changed between entry of the plea and the time of sentencing; and (4) whether additional information has been obtained that, if not considered, would constrain the court to an inappropriate disposition. Due process does not compel the application of a particular remedy in all cases. (People v. Mancheno (1982) 32 Cal.3d 855, 860-861.)

The usual remedies for violation of a plea bargain are to allow defendant to withdraw the plea and go to trial on the original charges or to specifically enforce the plea bargain. Withdrawal of the plea is the appropriate remedy when specifically enforcing the bargain would limit the judge's sentencing discretion in light of the development of additional information or changed circumstances between acceptance of the plea and sentencing. Specific enforcement is appropriate when it will implement the reasonable expectations of the parties without binding the trial judge to a disposition he or she considers unsuitable under all the circumstances. (Id.)

The United States Supreme Court has stated with respect to plea bargaining agreements that "[t]his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant

19

what is reasonably due in the circumstances. Those circumstances will vary...." (Santobello v. New York (1971) 404 U.S. 257, 262. In reversing a state court conviction in Santobello, the high court was necessarily resting its decision on federal constitutional grounds involving a due process violation, since the high court has no general supervisory power over state courts. (See id., at pp. 266-267, (conc. opn. of Douglas, J.); Westen & Westin, A Constitutional Law of Remedies for Broken Plea Bargains (1978) 66 Cal.L.Rev. 471, 474-475, fn. 10, 476, fn. 16.)

Due process considerations also govern the remedy, which is to be afforded a defendant when a plea bargain is breached. (Santobello v. New York, supra, 404 U.S. at p. 262 (maj. opn.); id. at p. 267 (conc. opn. of Douglas, J.); id., at pp. 267-268 (conc. and dis. opn. of Marshall, J.); Correale v. United States (1st Cir. 1973) 479 F.2d 944, 949; Palermo v. Warden, Green Haven State Prison (2d Cir. 1976) 545 F.2d 286, 296; United States ex rel. Baker v. Finkbeiner (7th Cir. 1977) 551 F.2d 180, 184.) As Santobello notes, the variations in plea bargain violations are such that no absolute rule can be formulated that will fit every case. The constitutionally compelled remedy must be fashioned with a view to the circumstances of the individual case. (People v. Calloway (1981) 29 Cal.3d 666, 676-677 (dis. opn. of Bird, C. J.)

In this case, it was a violation of federal due process for the court to sentence Petitioner to prison in violation of the plea bargain. The constitutionally compelled remedy should be specific enforcement of the 13 year sentence or withdrawal of the plea if the court deems that to be the appropriate remedy.

20

## PROOF OF SERVICE BY MAIL

### STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the aforesaid County of Orange, State of California, I am over the age of eighteen years and not a party to the within action; my business address is 555 N. EL CAMINO REAL, STE A, 418 San Clemente, California 92672.

On August 6, 2010 , I served the foregoing **PETITION FOR WRIT OF HABEAS CORPUS** on the Interested Parties in this action by placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail in San Clemente, California, addressed as follows:

ATTORNEY GENERAL            Aaron Franklin F85674
North Tower, Suite 500      Calipatria State Prison
300 South Spring Street     P O. Box 5005
Los Angeles, California 90013   Calipatria, California 92233

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

DATED: August 6, 2010

ALAN S. YOCKELSON



**TERRY NAFISI**
District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8 Los
Angeles, CA  90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

Thursday, August 12, 2010

**AARON FRANKLIN F85674**
**CALIPATRIA STATE PRISON, B4-212**
**P.O. BOX 5005**
**CALIPATRIA, CA 92233**

Dear Sir/Madam:

A [X] Petition for Writ of Habeas Corpus was filed today on your behalf and assigned civil case number CV10- 6016 JFW (RNB)

A [ ] Motion pursuant to Title 28, United States Code, Section 2255, was filed today in criminal case number _____ and also assigned the civil case number _____

A [ ] Motion for Extension of Time to File Habeas Corpus Petition was filed today on your behalf and assigned civil case number _____

Please refer to these case numbers in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:
[ ] District Court Judge _____
[X] Magistrate Judge _____ **Robert N. Block** _____
at the following address:

[ ] U.S. District Court
312 N. Spring Street
Civil Section, Room G-8
Los Angeles, CA  90012

[X] Ronald Reagan Federal
Building and U.S. Courthouse
411 West Fourth St., Suite 1053
Santa Ana, CA  92701-4516

[ ] U.S. District Court
3470 Twelfth Street
Room 134
Riverside, CA 92501

The Court must be notified within fifteen (15) days of any address change.  If mail directed to your address of record is returned undelivered by the Post Office, and if the Court and opposing counsel are not notified in writing within fifteen (15) days thereafter of your current address, the Court may dismiss the case with or without prejudice for want of prosecution.

Very truly yours,

Clerk, U.S. District Court

By: ___TDURANT_____
Deputy Clerk

CV-17 (06/09)          **LETTER re FILING H/C PETITION or 28/2255 MOTION**



**TERRY NAFISI**
District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**
312 North Spring Street, Room G-8  Los
Angeles, CA  90012
Tel: (213) 894-3535

Thursday, August 12, 2010

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**AARON FRANKLIN F85674
CALIPATRIA STATE PRISON, B4-212
P.O. BOX 5005
CALIPATRIA, CA 92233**

Dear Sir/Madam:

Your petition has been filed and assigned civil case number      CV10- 6016 JFW (RNB)

Upon the submission of your petition, it was noted that the following discrepencies exist:

☐ 1. You did not pay the appropriate filing fee of $5.00.  Submit a cashier's check, certified bank check, business or corporate check, government issued check, or money order drawn on a major American bank or the United States Postal Service payable to 'Clerk U.S. District Court'.  If you are unable to pay the entire filing fee at this time, you must sign and complete this court's Prisoner's Declaration In Support of Request to Proceed In Forma Pauperis in its entirety.  The Clerk's Office will also accept credit cards (Mastercard, Visa, Discover, American Express) for filing fees and miscellaneous fees.  Credit card payments may be made at all payment windows where receipts are issued.

☒ 2. The Declaration in Support of Request to Proceed in Forma Pauperis is insufficient because:

☐ (a) You did not sign your Declaration in Support of Request to Proceed in Forma Pauperis.

☒ (b) Your Declaration in Support of Request to Proceed in Forma Pauperis was not completed in its entirety.

☒ (c) You did not submit a Certificate of Prisoner's Funds completed and signed by an authorized officer at the prison.

☐ (d) You did not use the correct form.  You must submit this court's current Declaration in Support of Request to Proceed in Forma Pauperis.

☐ (e) Other: _____

Enclosed you will find this court's current Prisoner's Declaration in Support of Request to Proceed in Forma Pauperis, which includes a Certificate of Funds in Prisoner's Account Form.

Sincerely,

Clerk, U.S. District Court

          TDURANT

By: _____

          Deputy Clerk

CV-111 (07/06)          **NOTICE re: DISCREPENCIES FOR FILING OF HABEAS CORPUS PETITION**

